First case this afternoon is Robrock v. County of Piatt. It's actually a consolidated case. That's 4110590 and 4110591. For the appellant, Dana Rhodes and Rochelle Funderburg. For the appellee, Glenn Stanko. As to the attorneys for appellant, are you splitting time? And have you taken care of that clerk? Excellent. You may therefore proceed. May it please the court and counsel, I'm Dana Rhodes here for the appellant, County of Piatt. First of all, I want to address the issue of the standard of review. I realize that has been a source of contention in the briefs submitted by counsel. And I think there are several different issues brought forth in the briefs, and therefore several different, a couple different standards of review to be considered, depending on what the issue being addressed is. If the court is considering the issue of whether the evidence at trial or presented at trial is sufficient to support the ruling given by the trial court, of course that standard would be the manifest weight of the evidence. And that is one issue raised in the briefs and by the appellants in this case. The other issues raised in the briefs is whether or the constitutionality of the county's special use permit that was granted, and that would be a de novo standard of review, reviewing the constitutionality of an ordinance or a law, or the constitutionality of the court's ruling. And then the appellants have also raised the issue of whether the trial court applied the wrong standard when issuing its ruling. And again, I think that standard of review would be a de novo standard of review. So I think there's a couple of different standards of review that are applied depending on what the question is that's being considered in this case. And this, I think, is a confusing case. There's a lot of different issues that need to be addressed. I think the trial court's ruling should be reversed for several different reasons. First of all, I think the court's ruling was not supported by the evidence presented at trial. The court's ruling was that the Hyatt County's special use permit was unconstitutional, was arbitrary and capricious as applied to the plaintiff's property. What was that ruling based upon? The court appeared to base its ruling upon the LaSalle factors. The court did not appear to base its ruling upon the fact that the county did not make its findings a fact. The court did mention the fact that the county's Zoning Board of Appeals did not make its findings a fact, but it didn't seem to use that as the basis for why the special use permit was arbitrary and capricious. The purpose, I think, for the findings of fact under the legislative or statutory scheme and under the county ordinance is so that there's a due process, so parties have a due process and there's a procedure, and so that when there's a recommendation made to the county board, the county board knows what evidence was presented during the zoning board hearing and what the basis for the zoning board's recommendation is. I think the evidence, or the record rather, is clear in this situation that the zoning board had its hearing, both parties had an opportunity to present their evidence, why the gate nurses had a chance to present evidence why they wanted a special use permit, the Robrocks presented evidence why they wanted it to be denied, and the recommendation was then made to the county board. Well, in this case, the county board had its own separate hearing, so actually there was more due process afforded to the competing property owners than what the legislation or the statutory requirements are. So the county board really had a de novo process or another hearing, so it had an opportunity to hear all the evidence presented. The landowners really had two stabs at it to present evidence for that special use permit hearing. So I think, given that, I don't think the court really considered that, the trial court really considered or used the findings of fact as a basis for its ruling. And, you know, what if the findings of fact had been made at the zoning board of appeals level? When you consider Wright versus Winnebago County, I realize that's a second district case and it's not binding, but that case talks about an RLA and a special use permit, and it really illustrates the catch-22 that the county would have been in. That case talks about, you know, you can't deny a special use permit due to speculative fears of adjacent landowners and goes through different factors, the LaSalle factors. And so it really illustrates the catch-22 that the county would have been in and governs, you know, the standards that have to be applied in making those findings of fact. I think also the trial court's decision should be reversed because I think the injunction that was issued in this case is overly broad. First of all, it applies to more land than was subject to the litigation in this case. The injunction runs with the land. What do you mean it applies to more land than was involved in the litigation? It applies to 400 and some odd acres, and the land that was subject to the litigation in this case was just the 80-acre tract that was subject to the special use permit. It applies to other property owned by the Gaetros, and there was no evidence presented that that additional property should be subject or caused any, that it would interfere with the property rights of the Robrocks. And the court, the trial court, applied the injunction to all of the Gaetros property. So I think it's overly broad for that reason. I noticed that the trial court didn't reference the land located in Section 15. Do you think that was inadvertent? I don't know if it was inadvertent, Your Honor. Well, there's approximately 90, I believe it's 90 acres, about 85 acres in Section 15 that the court doesn't reference in its order. Is your interpretation, based upon your argument, however, that the court did intend to include that property in Section 15? If it would help you out, you can look at 87, that's Plaintiff's Exhibit 24. The court references property in Section 10 and Section 11, but the court does not reference property in Section 15. Your Honor, I'm not sure if that was inadvertent or not. I don't have the answer to that. And I'm not sure if it's adjacent to the Robrocks property or not. Well, it's not adjacent to it. I'm asking you the question because you're arguing that the court's order was too broad. If the court didn't intend to include that, indeed did not in the order, do you still make the same argument? I do. The special use permit applied to the 80 acres that the RLA was on, and the court applied the injunction to... Did the court give an explanation for doing that? No. There was no explanation provided in its comments, and it was supplied as part of the record, and it was not part of the written order that was submitted. You mentioned the LaSalle case. Yes. Obviously the trial court relied upon it. The court in LaSalle speaks about the restrictions imposed on the property. Which piece of property has the restriction on it here? Your Honor, in terms of restrictions imposed, are you referring to the injunction that I mentioned? Well, I'm talking about we have a special use permit that was granted by the county. Correct? Yes. So the court reverses. Right. So there's a restriction on the use of that property, isn't there? Well, I think the LaSalle case, I think, is really hard to apply in the set of circumstances we have here. Here we have the granting of a special use permit, and I know that the courts have said those factors... And Gatroses are being deprived of using their property the way they want to. Yes. Because they want this airstrip. That's right. Well, isn't that a restriction? That is a restriction. And in LaSalle, I think that was a rezone, and I think the restrictions imposed in that particular case, I think it was residential zoning and that piece of property, the landowner wanted to use it for commercial or industrial. So the restrictions in that case were the landowner was not able to use the property for commercial. So it was that particular restriction in LaSalle. So I think in this case... If the restrictions imposed bear no real and substantial relation to public health, safety, morals, comfort, and general welfare, the ordinance is voiced, I think it's kind of important for us to zero in on which property actually has the restriction upon it. Okay. I think it does apply to the Gatroses property. Does the restriction imposed, and the restriction would be the Gatroses' inability to use that particular tract as an RLA. So, you know, does that restriction, what benefit or what is the legitimate government purpose for restricting their use of that piece of property as an RLA? It seems to me like the trial court flipped the burden over to the... Is it Robrock or Robrock? I think it's Robrock, Your Honor. Okay. Put them to the Robrocks. Am I wrong about that? Well, the Robrocks were the plaintiffs, and I think it is their burden to show why our granting, the county's granting of the RLA, was not proper. And I feel that the trial court did shift the burden to the county and to the Gatroses to show why it was a legitimate RLA or legitimate special use permit. And it's their burden, by clear and convincing evidence, to show that it wasn't proper. Okay. We're out of time. Okay. Thank you. Thank you very much. Excuse me, counsel. My name is Rochelle Funderburg. I represent the Gatroses in this case. I think that the trial court applied the wrong standard to the evidence before it. And when I first looked at this case, I started out with the order, tried to wrap my head around what the trial court had done here. And the trial court talks a lot about what this case is not about. He says it's not about emotion, it's not an estoppel, it's not detrimental reliance. He finds that it's not about gyroplane safety. He finds that it's not about whether my client is a good pilot. He thinks that's okay. He finds that the RLA was constructed in compliance with IDOT regulations, so it's not about that. And, in fact, he says it looks like it went above the restrictions that are required. So then you kind of get pulled back and say, well, what is this case about? And he does acknowledge that the burden is on the challenging party, because they're challenging the constitutionality of an ordinance. They have a very heavy burden of proof to overcome that presumption. Then when you look at what he said, he says, well, I've looked at LaSalle, and every single factor here favors the plaintiff. Every single one. He doesn't talk about how he thinks that applies, but he says he's never seen a case that's so strong in favor of one side. And then he goes one step further, and he says, there's one factor here that nobody covered, and this is one that I think is important. The Robrocks attorney did not address the suitability of the subject property for the zone purpose. And he goes on to talk about, I have to look at this, and I have to find the Gaytrose property to be particularly suitable for this RLA. Not just that it qualifies, not that it meets the safety standards, not that it meets all the other standards, but I have to find it's particularly suitable for this particular requirement. And he goes on to say, and by the way, I've driven the county. I don't have to put my personal information aside. But he goes on to talk about how he's familiar with all of these parcels out there in the county, and he drives north to south every week, and it's common knowledge that the county's flat. And then he goes on to say, there's probably no less than several hundred tracts of ground in this county that couldn't accommodate an RLA, and so there's nothing particular about this piece of property. That is a higher standard than what is required by LaSalle. And in fact, now he's shifted the burden to my clients so that they have to prove not only that it meets the county's zoning requirements, but it's particularly suitable. I don't know what kind of evidence we would have to bring in to do that. In terms of the injunction, I would say also that it's overly broad. I don't know if the trial court's ruling was inadvertent when it didn't include the tract of land in tract 12 or 15. But if you think about how this RLA was designed, it really goes from the immediate southeastern portion over a small portion of the Robrock land. And really, when you look at the burden that the court has put on my clients' ability to use their property as they deem fit versus… How many acres did your client have? The client had approximately in total 438. Is there anything in the record to show that on that entire 438 acres there wasn't some place where the strip could have been placed that would not have interfered with the Robrocks? Yeah, there was nothing in the record that addressed that. Instead, really what the record focused on was where this particular one was constructed, and then there was a lot of talk about how did that affect the Robrocks' ability to, for example, run their conservation area? And the other problematic part to this was how did my client's RLA affect their ability to subdivide and develop in the future? Now, that is an interesting factor. It's one of the LaSalle factors. But what's interesting about that is that evidence is purely speculative. And the reason I say that is because there was not a shred of evidence about when that development might take place, if it would take place at all. Instead, what Mr. Robrocks said was, you know, I want to develop this property maybe in the future. It's kind of consistent with this sort of nature preserve that I've got. But, you know, my intention is that I will only subdivide and develop this property at a point where I need it for retirement funds. And I'm doing pretty well right now. That's really what the evidence was. There's no evidence whatsoever that that was imminent or even soon in the future. You know, the appraiser who rendered that opinion basically said, well, there's this huge diminution in value based upon that. But he had no idea when it would happen, if it would happen, and also admitted that there were none of the infrastructure laid that you would normally see in connection with a subdivision. So I really think when you pull back and look at this case, there's a lot going on. And really, when you read the cases that talk about these kinds of zoning and special use permits, they're all over the place. Because it's very hard to fit some kind of standard set of tests on a case-by-case basis. Because every single one of them, excuse me, is different. But more importantly, the court did several things here. He based his opinion on evidence not before him. He based his opinion on evidence that was speculative. He applied a higher standard to my clients, and I think overall made the injunction much more broad than it had to be. So for those reasons, we would ask that the decision be reversed and remanded so that there is an entry in favor of my clients. Well, let me ask you if the injunction is overbroad and it is not applicable to all the property, and instead, let's say the injunction had only been issued as to the specific area of property to which the exemption had been granted, or the special use had been granted. Would this be a different case? I mean, I understand you still have the first several issues. Well, you would get rid of that issue because, of course, the injunction is overly broad. But the reason for getting rid of that is a practical matter. If you lose, what difference does it make? If you lose on the first issue or the primary issue, the special use, what difference does it make if the injunction is overbroad? First of all, it means that it runs with the land, and my clients can never, ever apply to the county, even if the facts of the law changes. So, in the future, your clients might develop or anticipate the development of a different location or site for the landing site? Could be, but we're not. At the opposite end of the 400 and something? Right, but we're shut out. Okay. Thank you. Good afternoon. May it please the Court? I'm going to go right to one of your questions, Justice Turner. The restrictions imposed really refer to the particular zoning action in question. That works pretty well in the LaSalle type of case, where it's the petitioner, the owner, who didn't get what he wanted to get. In that case, I think the property was zoned residential, but the owner wanted to make it commercial. In this case, the zoning action at issue is the special use permit granted to Scott and Brenda Gaytros, and it is my client, the Robrocks, who are objecting to that special use permit. So a better language would be the particular zoning action involved, as opposed to the restrictions imposed, because restrictions imposed doesn't really work for the special use situation. The tract of land question. I think Judge Freese included only the property in Section 10 in the injunction order because that is all we included in our complaint. We alleged that the ownership of that 435 acres or so in Section 10, which is all contiguous and which is adjacent to the Robrock property, we didn't say anything about the other property owned in Section 15. So I believe Judge Freese took what we had in our complaint and used that. My only concern with their counsel is that Judge Freese referred to, I think it was 257.56 acres, and to get to that amount, he would have had to have included that property in Section 15. I might have my acreage wrong, but whatever his order says, which for some reason I can't find it in front of me, there seems to suggest that he was referring to the property in Section 15, but then part of it seems to suggest he wasn't since he didn't reference it. But the total acreage that he referred to would have necessarily included the acreage from the, I guess it would be the east half of the northwest quarter of Section 15. Well, there's 257.56 acres in the east part of Section 10, and then there's the, I know in our complaint, there's at least 93 acres in the west part of Section 10, and I know that was all incorporated in the complaint. I'm not sure if there's something missing there, but I think what was in the order was consistent with what was in our complaint and what we were calling the road rock farm. Did you refer to the 177.49 acres in your complaint? I think we only referred to Section 10. As I just looked at it, I looked at it briefly. We referred to 257.56 acres in the east half of Section 10, and then we referred to 177.49 acres in the west half of Sections 10 and 11. Right, and so does the trial court. I finally found the order. And the trial court could not have, nor could it have you come up with 177.49 acres based upon the plat from Plaintiff's Exhibit No. 2487 in the record, unless it also included the property in the east half of the northwest quarter of Section 15. I think the error there is, as I look at it now, I think when we alleged Sections 10 and 11, it should have been Sections 10 and 15. I think there's a typographical error in the description. Okay, so then your request was, and your interpretation of the trial court's order was, it included the entire 435.60 acres as far as the permanent injunction against applying for an airstrip in the future. The entire Gatros Farm, yes. Why is that correct or fair, if it wasn't even litigated, whether this airstrip could have been placed someplace in that acreage which would not interfere with your client's property? Well, of course the airstrip is on the farm. The farm is basically one unit. There's also evidence that besides this one, I think there was reference to a 79.5 acre track in the application, but there's also a building that goes with that airstrip that's on the track to the north that's on the house property. So it's not just that one track that they referenced in their application that's really impacted here. More of that property is being used, not for the airstrip itself, but at least for a building that's ancillary to the airstrip. So we viewed it all as, you know, they sought this use on the farm, that's what we alleged in our complaint, and the trial court determined it wasn't appropriate, so that's the legal description that we asked the court to put into the injunction order. I raise the point that this issue... Okay, let me ask this hypothetically. What if there had been 1,000 acres involved? Would that make any difference? I think, you know, I think it depends on how it's configured and whether it's contiguous or not. I mean, I think... Well, take a look at Plaintiff's Exhibit Number 24. Go up into Section 10, which clearly is included in the court's order. Why couldn't an airstrip go into, let's say, the east half of the southwest quarter of Section 10 without interfering with your client's property? I don't know if you can answer that because it wasn't really litigated. The focus was on the particular airstrip where it was located. That's correct. We didn't focus on other locations on the farm. Okay, so why isn't the injunction too broad then? Well, again, it seems to me that it's just like when somebody owns a five-acre piece of property and they try to rezone that property, although they're only going to really use part of it, the whole property is implicated. And I guess that's the concept here. The farm is the unit. It's similar to a piece of... I mean, the special use permit is based upon a specifically described 80-acre tract, isn't it? The... I don't know that the ordinance granting it... Well, I guess that would be... The ordinance really just said part of the southeast quarter of Section 10. It really didn't... Well, but we know what... But maybe that's a reason for somebody to clarify the underlying orders. But that's really what we're talking about. That's what there was evidence about. There's no doubt that the application focused on the 79.5-acre tract and that the evidence focused on the location of the RLA on that tract. Right. And, again, we had alleged that the Gatros has owned the entire farm and this was part of the entire farm. Right. So when the order was prepared, we asked that the entire farm be included. I raised the point that no objection was ever raised to that in the trial court. The trial court, if it was broader than the trial court intended, nobody ever brought that to the trial court's attention. So, anyway, I think that's how it ended up. And it does appear, Justice Turner, that there was a typo and that we intended Section 10 and 15 there. Okay. So, you know, the trial court made it clear that it considered all eight LaSalle-Sinclair factors and it found for the plaintiff on all of those factors. And there's been a lot of focus on his comments that he made about the suitability of this location for an RLA. And I go back to Wakeman, first of all. The suitability factor examines the property as it is zoned. In this case, it looks, was the property suitable for agricultural purposes where the RLA was supposed to be located? Well, yes. It was being used for agricultural purposes. It was productive. The county argues, citing to Wakeman, and I cite to Wakeman for that proposition, that the county claims that no, the suitability factor looks at the suitability of the property as rezoned or with the special use permit. But if you go back to Wakeman, although there was a lot of discussion in Wakeman about downzoning a big part of the city of Urbana from R4 multifamily residential to R2, what that case really involved was a petition to rezone it back from R2 to R4 about five years after it had been downzoned. So when the court was talking about and looking at the suitability of the property for the zoned purposes, it was looking as it was then at the time the rezoning petition got filed, which was the R2, which had resulted about five years earlier from the downzoning. So you look at the suitability factor from the standpoint of was it suitable for how it was zoned at that point in time? If you look at LaSalle, LaSalle makes that same point. LaSalle makes it clear that the suitability factor is how it is currently zoned. And was it suitable for the use as it was currently zoned? Now in this case, what the trial court did, and I actually argued suitability both ways, because at the time there was a little doubt in my mind and I kind of missed what Wakeman and LaSalle had done. But I argued it the first way, suitability for the zoned purpose. And I also argued it the other way, just to make sure I had it covered. Judge Freese's comments, I think as I interpret them, he took it that I was mainly arguing, as I've just indicated to you, the way it should be. But he was examining, okay, is this suitable for an RLA? And that's not wrong, because LaSalle says you can look at any number of factors, you're not necessarily restricted to all those factors. But what he was really doing is saying, if you look at his comments, he was saying, what would have happened if this special use permit would have been denied, and the Gatroses had come in here and said, well, there was error in the denial of the special use permit. Would it have been wrong to say, would I have been compelled to say that this was suitable, such that the special use permit should have been granted? And he said no. And he did make some comments about driving through Pike County, but he was just kind of looking at the, he said himself, he was looking at the flip side. I don't see anything wrong with that. And the fact is, he said it in his oral recitation, he said it in the written order, that all eight LaSalle factors favored us in this case. And that means he considered them. Now, the defendants point to comments, he said, well, this isn't about the financial circumstances of the party or about financial matters. Well, again, there was evidence, for example, about how much the Gatroses had spent in developing the RLA. There was evidence in how much they'd spent to buy their gyroplanes. So in my view, the judge was saying, that doesn't really matter. It also doesn't really matter how much the Robrocks spent in fixing up their property and making it a wildlife area and trying to get it ready for residential development at some point. So that's the reason for that comment. There's some other ones that point to it not being about gyroplane safety or whether Scott Gatrose is a good pilot. Well, that's true. There was evidence about all of that. It wasn't a direct issue. It bore in some ways on the public safety factor. But again, he made it clear throughout in what he said and what he signed that he had considered all of the LaSalle-Sinclair factors and that they all favored the plaintiff. And we came into that case with a really heavy burden of proof. And that's clear and convincing evidence. And the judge found that we had met our burden to show by clear and convincing evidence that the grant of the special use permit was arbitrated and arbitrary and unrelated to the public health, safety, morals, comfort, and general welfare. He found that we had satisfied that burden of proof. Again, it's in his written order. My question is, did he get it mixed up? The grant of it or should it have been the denial of it by the trial court? No. The focus was on whether the special use permit should have been granted or not. It was granted. We were saying that it should not have been granted. According to LaSalle, restrictions imposed bear no substantial relation to the general welfare as a standard to apply. But your argument suggests that the restriction was not on the Gatros' land. Am I saying that correctly? Well, you have to look at the impact. I'm trying to get there, but they had property. They want to use it in a certain way, and they're restricted from doing so because they can't have the RLA. As I understand your argument, that is not the type of restriction that LaSalle is referring to. Or it doesn't lend itself, in this particular case, to analyzing whether the court uses a proper standard. In the special use context, the restriction morphs into the zoning action taken. So if it's granted, let's say, then you're looking at whether the grant of that special use permit was arbitrary or unrelated, etc., insofar as it pertains to the challenge by the neighboring property. Here we have neighbors challenging, so you're looking at the impact of the grant of that special use permit on the neighboring property. That's why you look at the diminution of value. You look at the hardship to them. That's what the focus was here. Of course, we were in here saying that the county board should have never granted this special use permit because it has this negative impact on our property. I see what you're saying, what the focus was. But should it have been? Oh, yes. That's the way it's done. Shouldn't your client have, instead of filing under a zoning file for some kind of nuisance, that you can't fly this plane over my property, come snooping in, flying low over the crops, isn't that the kind of relief you're requesting as opposed to doing so through this zoning? No, there's a variety of cases out there that recognize these LaSalle-type challenges in special use permit cases. So as you're looking at the LaSalle-Sinclair factors, where it uses the word restrictions, you suggested you might say the zoning action taken. Exactly. Or one might say to the extent to which property values are diminished by the special use permit that was allowed. Right. And that the factors are exactly the same. Right. You're doing it from a different perspective. Like LaSalle, it was the owner who didn't get what he wanted. In this case, it's the neighbor objecting to the other neighbor who got what he wanted. But your client had no restriction. Your clients had no restriction on their property, as far as their use.  Their restriction was on Gatros' property. Right. They were complaining about, well, I don't think it was a restriction. It allowed Gatros to do something on his property that he couldn't do before. And my client's complaint was that that was impermissible in this particular situation, because if you look at all of the LaSalle factors, as applied to my property, and that's what the inquiry really is, it's arbitrary. Can you explain how the gyroplane or the airstrip could possibly diminish the value of farm ground? Well, our appraiser found that the 94 acres of the Robrock property, the highest and best use was for residential development. And the loss in value of that property was because with that airstrip there, in his opinion, that took the highest and best use from residential development to agriculture. I understand. I mean, but the farm ground itself. Didn't he also say it cut the value of the ground that was going to be used for crops? He defined a small impact area right at the end. You know, we didn't really do much with that and didn't even really argue it. To my way of thinking, what the important part of the appraiser's opinion was, was the north 94 acres the highest and best use. And I've heard a lot of sound and fury about the highest and best use. No objection was made to the testimony of the appraiser about it or to the foundation for that testimony. Highest and best use occurs every day in litigated cases, in reported cases. And somebody may not necessarily intend to develop a piece of property themselves for that use, but if it has value for that use, then it's considered. And it's considered an eminent domain case. And I cited a couple of cases where they do that. So, you know, if the defendants thought that there was something wrong with the appraiser's opinion about highest and best use, then they should have been objecting to the foundation, which is objecting to the admissibility of his testimony in the first place. They didn't. It's in. I pointed out why he's far more qualified than the appraiser they had that criticized him anyway. But I see my time's up, so thank you very much. Thank you, counsel. Rebuttal? Are you both going to be giving rebuttal or just one of you? Okay. Thank you. To follow up on what Mr. Stanko just said, you know, the eminent domain cases don't really apply. And here's why. Because when you talk about highest and best use in an eminent domain case, there is an actual taking by the government. You have a point in time where you know what the value is going to be. It's a fixed point in time. Here, even though we had a lot of talk about the highest and best use, it's only based upon whether the Robrocks developed that property or if they do it. Wait a minute. If I own a house and it's next door to a business district, I can't say during condemnation, I can't call an appraiser that says the highest and best use of this property is for business and it's a prime spot, and when this guy retires in three years, he's going to sell it. And he wants to sell it for the highest and best use because nobody will ever want to live in this house. In condemnation, that would be considered. That would be part of the valuation. Right, but there's no evidence that we had anything here other than this speculation that Mr. Robrock might do something. We don't know if he'll ever do it. Well, you don't know if I'll retire and sell it. But when the state is taking my house, which I live in, and I say, I understand that this house is actually worth a lot more if I sell it now. I don't want to. I want to wait when I retire. I want to cash in on the fact that I've been put up with the grief of living next door to this gas station for the last seven years, and that valuation would be taken into account. So I understand that there is a degree of speculation to it. Right. But there is somebody saying the highest and best use of this property is for future development. But you'd have a discount and a lot of other things built into this, and there's no way to build into this a discount figure since we never know if we'll ever move the house. Well, let's back up from that and say the dollars don't matter at all to either side. Well, they probably don't. You're right. And let's say that Mr. Stanko is correct about the LaSalle-Sinclair factors, in that you don't talk about restriction, because there really isn't a restriction. The restriction existed originally. You can't do this on your property unless you get a special use permit, which then means you read the factors the way I suggested. What is it about this special use permit, starting with the notion it's presumptively valid, but what is it about it that promotes the health, safety, morals, general welfare of the public? We could argue about that, but that ought to be the question. And if the plaintiff shows that it really doesn't benefit anybody except the applicant for the special use permit, and it has some detriment to us, and the economics are awash, why doesn't that factor favor the plaintiff? Because I would say that there is evidence that it does promote the public health, safety, and welfare, and here's why. If you look at the testimony of the gentleman from IDOT, he said the state, in its infinite wisdom, has advocated this promotion of aeronautics, and the RLAs support that. And if you look at the line of cases that talk about special use permits, they talk about public health, safety, and welfare, but they say that's not the determining factor, and if it's absent, that's just one thing. I was just using that one as an example. I'm saying that some of these don't matter. They're awash. You're right. But two or three or four of them out of the eight factors are the ones we probably ought to consider. There's even one court that says you may meet all of them and not qualify, and on the other hand, you may meet some of them and still qualify. So it really is a case-by-case, and unfortunately LaSalle doesn't lend itself well to the particular case that we have. Well, do you agree with Mr. Stanko that you have to paraphrase some language and put it into there so that you're not talking about a restriction? You're instead talking about this party got a special use. They like it. It's presumptively valid. Now let's take these factors into account, and these are the factors that the plaintiff is going to bear the burden of proof on to show that it shouldn't have been granted. Yeah, I think I disagree with exactly what he said. I think I would look at it more in terms of does the grant of special use permit somehow unacceptably burden the other property? That would be mine, and I would say that no, on this set of facts, it does not. Okay. Ms. Rhodes, you are the acting state's attorney from Piatt County, are you not? I am. I apologize for not acknowledging that before. I think I should have done so for the record. Thank all three of you for your fine arguments. The case is submitted, and the court stands in recess.